# Fort Payne Bank v. The Alabama Sanitarium *et al.*

*Bill in Equity to set aside Conveyance by one Corporation to another as fraudulent and void as to Corporate Creditors.*

1. *Sale by corporation on credit not void as being without consideration.*—A corporation has the same right to dispose of its property for cash or on credit, as a natural person, and a promise to pay, in either case, constitutes a valuable consideration sufficient to uphold a deed; and where a corporation conveys all of its property to another corporation, and receives from the latter as payment therefor mortgage bonds on the property conveyed, it is a sale on a credit, and the transfer is not without consideration and void.

2. *Fraudulent conveyance by corporation; division of proceeds among the stockholders entitles creditor to set aside sale.*—Where the stockholders and officers of an insolvent corporation convey all of its property to another corporation, in consideration of mortgage bonds issued by the grantee on the property so conveyed, and, without providing for the debts of the grantor corporation, they divided the bonds *pro rata* among themselves, such transfer is a fraud on the creditors of the grantor, though such creditors knew of and acquiesced in the transfer at the time; and such creditors may set aside the conveyance, whether the grantee be a stranger to the grantor, or a new corporation formed by the stockholders of the latter.

3. *Bill by creditor of insolvent corporation to set aside conveyance to another corporation; when error to dismiss bill.*—Where a bill, filed by a creditor of an insolvent corporation to set aside a conveyance of all its property to another corporation as being without consideration, fraudulent and void, alleges facts sufficient to justify relief, and, in addition to a prayer for special relief, contains a prayer for general relief, and decrees *pro confesso* have been rendered against some of

[Fort Payne Bank v. The Alabama Sanitarium *et al.*]

the defendants, it is error to dismiss the bill as to such defendants, on final hearing, although the evidence was not sufficient to support the bill as to the respondents who answered.

APPEAL from the Chancery Court of DeKalb.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed by the Fort Payne Bank, on September 28, 1892, against The Alabama Sanitarium, the Fort Payne Educational Association, E. W. Godfrey, as trustee, C. O. Godfrey, and eighteen other defendants. The bill was filed by the complainant as a non-secured creditor of The Alabama Sanitarium, it being alleged in said bill that it was the owner of a note for $6,672.95, which had been given by The Alabama Sanitarium to the Bank of Fort Payne, and had been subsequently transferred to the complainant.

The validity of the note sued on, and complainant's ownership of it, are fully established by the evidence in the cause. Its original consideration, as shown, was money loaned by the Bank of Fort Payne to The Alabama Sanitarium renewed, from time to time, until, on March 31, 1891, this note was given for the debt and accrued interest. The Bank of Fort Payne pledged this, and other obligations due to it, to the First National Bank of Chattanooga, Tenn., as collateral security for a loan by said bank to it, of about $12,000, and these collaterals, on default of the payment of said loan by said borrowing bank, were sold by the Chattanooga bank, and C. O. Godfrey became the purchaser of them, and afterwards, this and other notes so purchased by him were transferred to the complainant—The Fort Payne Bank—a different corporation from the Bank of Fort Payne. The evidence also shows that said C. O. Godfrey was, at the time he purchased said notes at said sale, a director in the complainant corporation, and it further tends to show he purchased said notes for the complainant.

Referring to such further facts as are necessary for an understanding of the case, it appears that The Alabama Sanitarium was chartered under the laws of this State, on the 20th of March, 1889, with C. O. Godfrey, A. S. Loventhal and E. W. Godfrey as incorporators; that the capital stock was $40,000, and was all subscribed by these three incorporators, and C. O Godfrey was

elected president, and E. W. Godfrey, secretary of the company; and, it is not made to appear, what other persons besides these three, except the president and cashier of the Bank of Fort Payne, ever became stockholders in said company, or that there was ever any change in the incumbency of the offices.

The evidence shows, that the original notes for the money borrowed, for which the one in suit was a renewal, was indorsed by C. O. Godfrey and A. S. Loventhal, but the one in suit does not bear their indorsement. It is not shown with certainty, how their names as endorsers on the notes disappeared. But the evidence does show, that there were negotiations between the lending bank and C. O. Godfrey, for their release, by his giving collateral security by way of a mortgage on town lots, and the transfer to the bank of notes of other parties which were secured by liens on land. Whether this negotiation was ever perfected or not is not disclosed, further than such security for said note was given and the names of said endorsers no longer appear on the note. The evidence also tends to show, in this connection, that the collaterals given by said Godfrey to secure said note, were, at the time, deemed ample for the purpose.

It is an admitted fact, that on the 24th of June, 1890, the Fort Payne Educational Association was incorporated, under the general incorporation laws of the State, with *nine* persons as incorporators, whose names are given, no one of whom was an incorporator or stockholder, so far as is shown, in the Alabama Sanitarium, except C. O. Godfrey. He was an incorporator and stockholder in the Sanitarium and an incorporator of the Educational Association. It does not appear, that there were any stockholders in the Association.

It was shown, that a meeting of the stockholders of the Sanitarium was held at Fort Payne, on the 16th day of August, 1890, at which meeting a resolution was passed to the effect, that whereas the Educational Association, a corporation duly organized under the laws of Alabama, had proposed to purchase the hotel, land and entire property of the Sanitarium, and to issue bonds for the sum of $30,000 on said property, due and payable in five years after date, bearing interest at the rate of 6 per cent. *per annum*, and offered in payment of said property, $25,000 of said bonds, it was unanimously resolved

that said proposition be, and it was accepted, and that said bonds should be accepted in full payment for all of said property; and the president and secretary were authorized and instructed to execute a warranty deed to said property to said Educational Association. The following resolution was also adopted at that meeting: "That the board of directors be instructed to issue a dividend of said bonds, when same be received, and they be authorized to wind up the affairs of the company." The minutes of this meeting fail to show, and it does not elsewhere appear in evidence, who the stockholders composing this meeting, and who the officers—president, secretary and directors—of the corporation were. It is not disputed that the Sanitarium acting under this resolution, did, on the 23d of January, 1891, execute and deliver its deed of conveyance of said property—which was all it owned—to the Educational Association.

On the 18th day of August, 1890, at a meeting of all the trustees of said association, it was resolved and voted, to issue a series of bonds from one to three hundred, both inclusive, for $100 each, amounting in the aggregate to $30,000, payable September 1st, 1895, at the First National Bank of Fort Payne, in the city of Fort Payne, Alabama, to bear interest at the rate of 6 per cent. *per annum*, payable semi-annually, on the 1st days of March and September, each year, which bonds were to be devoted solely to the payment for the academy buildings—the Sanitarium property—and the needs and purposes of the school. On the 27th of January, 1891, said Educational Association executed its deed of trust, in accordance with said resolution, to the First National Bank of Fort Payne, as trustee, to secure the issue of the bonds of the corporation as provided in said resolutions, and delivered to the Sanitarium $25,000 of said bonds in full payment for said property, retaining $5,000 of the issue. This deed was filed for record in the office of the probate court of De-Kalb county, on the 30th January, 1891.

The complainant bank was not organized and did not commence business until July, 1892; nearly two years after the Sanitarium, at a meeting of its stockholders, resolved to sell its property, wind up the corporation, and divide the proceeds of the sale among the stockholders, and about 19 months after the Educational Association purchased said property, and paid for it in the

issue of its bonds. The First National Bank of Fort Payne, the original trustee in the deed, resigned and E. W. Godfrey was duly appointed trustee in its place. Default having been made in the payment of the interest on the bonds, E. W. Godfrey, as trustee, proceeding under and according to the terms of the deed, advertised said property for sale on the 4th day of October, 1892.

The prayer of the bill is,(1), for an injunction against the sale of said property by said Godfrey; (2), that a receiver be appointed, to take charge of the property; (3), that on final hearing of the cause, said deed of the Sanitarium to the Association be cancelled and set aside as voluntary and fraudulent as to complainant and other creditors of the Sanitarium, and that the property therein described be subjected to the payment of complainant's debt; (4), that the issue of said bonds be cancelled and held fraudulent and void; and, (5), for general relief.

As grounds for relief thus prayed for the bill makes the following specific charges : 1. That the recited consideration of $25,000, contained in the deed of the Sanitarium to the Association, was false and fictitious, that there was, in fact, no consideration paid, and the transfer of the property was wholly without consideration. 2. That the trustees of the association were the owners of stock in the Sanitarium, and the transfer of the property was, in fact, to the same parties who owned stock in the Sanitarium ; and they knew the condition of the affairs of the Sanitarium ; and knew of the indebtedness to the Bank of Fort Payne, and knew and were fully advised of all the facts in relation to the transfer. 3. That the bonds were issued by the Association and were delivered to the owners of the stock in the Sanitarium, and that all the defendants to the bill, except the Sanitarium and the Association, were owners of the bonds of said Association, and were owners of the stock of the Sanitarium; and said bonds were issued and delivered to the present holders of the bonds, in lieu of stock in the Sanitarium, this being the only consideration of said bonds. 4. That said issue of bonds was fraudulent, unlawful and unauthorized; that the transfer of all of the property of the Sanitarium to the Association was a fraud on complainant and the creditors of the Sanitarium, and hindered, delayed and defrauded them ; that the Sanitarium and the Association are insolvent, and if the sale

of the said property advertised by said Godfrey, as trustee, takes place, the proceeds arising from it will be distributed among the persons who own and hold the said bonds ; that no assets will be left out of which complainant can collect its debt, and it will be left without recourse in its collection.

On October 1st, 1892, after the execution of the proper bond, a writ of injunction was issued, restraining the trustee from selling the property, which originally belonged to The Alabama Sanitarium, or in any manner interfering with the same. On October 5th, 1892, a receiver was appointed by the register in accordance with the prayer of the bill.

Of the parties defendant ten were non-residents, against nine of whom, after publication, the bill was taken as confessed. The bill was not taken as confessed against M. H. Pennell, one of the defendants, nor was he served with subpœna. All the defendants except those against whom decrees *pro confesso* were taken and said M. H. Pennell, filed answers, in which many of the allegations of the bill, down to section seven—in which the charges on which relief is sought began to be averred—were admitted to be true ; but, beginning with section seven all of said charges are positively and specifically denied, except that C. O. Godfrey was a stockholder in the Sanitarium and a trustee of the Association.

The answers of the two corporations denying the allegations of the bill that the trustees of the Association were all owners of stock in the Sanitarium, aver that six out of the nine trustees, whose names are given, never did own any stock therein, and knew nothing of the affairs of the Sanitarium, and of its indebtedness to the Bank of Fort Payne, and never had any interest, directly or indirectly, in said corporation, either at the time of the transfer of said property to the Association, or at any other time ; that no one of the trustees of the Association, had any personal interest of any character in the property of the association, or in any property that might be conveyed to it; that the Association delivered the $25,000 of its bonds, when issued, directly to the stockholders of the Sanitarium, with the consent and by the direction of the officers of the Sanitarium, and with the knowledge and consent of the Bank of Fort Payne ; that W. P. Rice and F. H. Toby, were, at that time

president and cashier of said bank, and each of them were owners of stock in the Sanitarium, and each received his proportion of the share of said bonds.

It is further denied, that all the defendants named in the bill, except the Sanitarium and the Association, were owners of said bonds, and it is averred, that the defendants, E. W. Godfrey, C. O. Godfrey, H. B. Hill, A. Conaut, J. F. Brown, Sidney Sargant, G. M. Baker, J. W. Spalding, Fort Payne Hardware Co. and Rebecca Loventhal, were not owners of any of said bonds at the time of the filing of this bill, and had not been such owners for some time.

Mrs. Loventhal denies the allegations of fraud on which the bill rests for relief, denies that she owns any of said bonds or has any interest in them, or that any of them were delivered to her for stock in the Sanitarium.

The other defendants, who were served, deny the allegations of fraud as averred in paragraphs 7 to 13, inclusive. Neither one of the witnesses examined in behalf of complainant states any facts of value to the complainant on the controverted facts in the case. Hemphill, either as assistant cashier, or as cashier, was connected with the Bank of Fort Payne, from March, 1889, to April, 1892, and is the cashier of the plaintiff bank, organized in July, 1892. He does prove that F. H. Toby, the cashier of the Bank of Fort Payne, the then owner of the note sued on, received some of the bonds of the Association. F. H. Toby testified, that he was the cashier of the old bank, from and including the year 1889 to February, 1892 ; that he knew of the distribution of the bonds of the Sanitarium among its stockholders ; that he received some of them, and that Mr. Rice, who was president of the Bank of Fort Payne at the time, was a stockholder and received some of the bonds ; that he knew the Association, after it was organized, proposed to issue its bonds and purchase the property of the Sanitarium with the bonds. He also testified that he was informed the transfer of the property was made, and the bank took no steps to prevent it, and gave no notice to, and made no demand on, the Association for the claim it held against the Sanitarium. Who were the stockholders of the Sanitarium, who were the trustees of the Association, who were the parties who received the bonds of the Sanitarium in distribution for their stock

[Fort Payne Bank v. The Alabama Sanitarium *et al.*]

therein as alleged in the bill, and who were the present owners of the said bonds, was not shown or attempted to be shown by the complainant. It does appear, as stated above, that C. O. Godfrey was a stockholder and incorporator of the Sanitarium, and was also a director in the Bank of Fort Payne.

For the defendants it was shown by the depositions of the trustees of the Association, examined as witnesses in the case, that they were not, at the time of the conveyance of said property to the Association, acquainted with the financial affairs of the Sanitarium, and did not know and had no information of the complainant's debt or any other debts of said corporation; and three of them swear, that, so far as they knew, neither of the other trustees ever had any such information. The witness Train swears that there was no fraud or attempt at concealment in the transfer, and it was not made with the view of avoiding any debt or liability of the Sanitarium—as to the existence of which he was ignorant—but was made in good faith for valuable consideration, to secure further educational advantages to the youths of Fort Payne.

On appeal to the chancellor from the order of the register appointing the receiver, and on the respondent's motion to dissolve the injunction, for want of equity in the bill and on the sworn denials in their answer, the chancellor, on October 14, 1892, annulled the appointment of the receiver, and ordered the property restored to the possession of the trustee, and dissolved the injunction. Upon the final hearing of the cause, on pleadings and proof, the chancellor adjudged that the complainant was not entitled to the relief prayed for, and decreed that its bill be dismissed. The present appeal is prosecuted by the complainant; and it assigns as error the interlocutory decree annulling the order appointing the receiver and dissolving the injunction, and the final decree of the chancellor dismissing the bill.

DAVIS & HARALSON and HOWARD & EWING, for appellant.—1. The conveyance by the Alabama Sanitarium to the Fort Payne Educational Association of all its property was voluntary, and a fraud in law against pre-existing creditors.—*Vincent v. State*, 74 Ala. 274; *Lockard v. Nash*, 64 Ala. 385; *Seals v. Robinson*, 75 Ala. 363; *Kirksey v. Snedecor*, 60 Ala. 192.

2.    Neither the bondholders, nor any officer, nor member of the new corporation was an innocent purchaser without notice.    All are charged with the knowledge of the voluntary conveyance by the Alabama Sanitarium to the Fort Payne Educational Association.—*Hoyt & Bros. v. Turner & Oates*, 84 Ala. 523 ; *Beall v. McGehee*, 57 Ala. 438.

3.    Creditors are entitled to the security of the capital—entire capital—of a corporation, until their claims are paid.    And any distribution among the stockholders of the assets of the corporation before the debts are paid is void as against the existing creditors.—2 Morawetz on Corp., § 790.    And so, a sale to another corporation without value.—2 Morawetz on Corp., §§ 791, 792-3.

4.    In the hands of the new corporation, the property conveyed was subject to the debts of the old corporation. *Brum v. Ins. Co.*, 16 Fed. Rep. 140 ; *Hibernia Ins. Co. v. S. L. & N. O. Transp. Co.*, 3 McCrary Rep. 368.

5.    The burden was upon the respondents to show that the consideration was valuable.—*Vincent v. State*, 74 Ala. 274 ; *Mobile Savings Bank v. McDonnell*, 89 Ala. 434 ; 2 Morawetz on Corp., §§ 791, 792.

GEORGE D. PARKS, *contra.*—1.    The consideration expressed in the conveyances was valuable and valid, and the purchasing corporation bought in good faith.—*Pique v. Arendale*, 71 Ala. 91 ; *Farlin v. Sook*, 30 Kan. 401, s. c. 46 Amer. Rep. 100 ; *Mobile Sav. Bank. v. McDonnell*, 89 434 ; *Shealy v. Edwards*, 75 Ala. 411 ; 78 Ala. 176 ; *Caldwell v. King*, 76 Ala. 149.

2.    It is equally well settled that, under a deed reciting a money consideration, or a consideration resting in the payment of a debt, or any other valuable equivalent, it is competent to support the conveyance by parol proof of any consideration, since thereby the effect and operation of the instrument is not changed, and the rule against varying or altering writings by parol testimony is not offended.—Waits Fraud. Convey., § 221 ; *Hubbard v. Allen*, 59 Ala. 297 ; *Stringfellow v. Ivie*, 73 Ala. 209 ; *M. & M. R'way. Co. v. Wilkinson*, 72 Ala. 286 ; *Manning v. Pippen*, 86 Ala. 357 ; *McKinster v. Babcock*, 26 N. Y. 378 ; *Saunderson v. Broadwell*, 82 Cal. 132 ; *Chipman v. Stern*, 89 Ala. 207 ; *Traders Nat. Bank v. Clare*, 76 Tex. 47.

3. To impeach a conveyance for a valuable consideration, it is necessary to allege and prove a fraudulent intent on the part of the grantee, or that he took it with a knowledge of the grantor's fraudulent intent.—*Carpenter v. Muren*, 42 Barb. 300 ; *Jackson v. Mather*, 7 Cow. 301 ; *Fifield v. Gaston*, 12 Iowa 218 ; *Magniac v. Thompson*, 7 Pet. 348 ; Bump. Fraud. Conv., 227; *Hall v. Heydon*, 41 Ala. 242 ; *Prewitt v. Wilson*, 13 Otto 22 ; *Horbach v. Hill*, 112 U. S. 144 ; *Jones v. Simpson*, 116 U. S. 609 ; *Astor v. Wells*, 4 Wheat. 466 ; *Wheaton v. Sexton*, 4 Wheat. 503 ; *Crawford v. Kirksey*, 55 Ala. 282.

4. Prior knowlege of C. O. Godfrey was not notice to the Association. In Alabama, the knowledge of an agent, to operate as a constructive notice to the principal, must have been acquired after the relation of principal and agent was formed.—*Mundine v. Pitts*, 14 Ala. 84; *Frenkel v. Hudson*, 82 Ala. 158 ; *McCormick v. Joseph*, 83 Ala. 401 ; *Wheeler v. McGuire*, 86 Ala. 398. Notice to a director not charged with the business of the corporation is not notice to the corporation, if he does not communicate that knowledge to the other directors.—Angell & Ames on Corp., § 307; Cook on Stocks & Stockholders, § 727. The knowledge of facts which is acquired by the officer of a corporation in the course of his private business, and not in his official capacity, does not constitute notice to corporation.—*Manhatten Brass Co. v. Webster Glass &c. Co.*, 37 Mo. App. 145.

HARALSON, J.—1. On the foregoing statement of the pleading and evidence in this cause, it is insisted that the conveyance of the Sanitarium to the Association was without any consideration, voluntary and void. So far as this branch of the contention goes, it must be said, that a corporation has the same right to dispose of its property for cash or on credit, as any natural person has, and a promise to pay, in either case, constitutes a valuable consideration to uphold a deed.—Bump on Fraud. Convey., 225. Unaffected by other questions in the case, the transaction between the Sanitarium and the Association was no more than the ordinary sale by one person to another of his property on a credit, for which the purchaser executed his notes to the vendor, with a deed of trust or mortgage on the property sold, to secure the payment of the purchase money.

2. It is alleged, however, as we have seen in the statement of the case, that the parties, whose names are given, who were the trustees of the Association, were the owners of the stock in the Sanitarium, and knew of the indebtedness of that corporation to the Bank of Fort Payne; that the bonds were issued and delivered to the owners of said stock, and that the present owners of the bonds were the owners of said stock. These allegations, so specifically denied in the answers, have not been proved, nor attempted to be proved, by complainant, but have been, to a large extent, at least, disproved by defendants.

A. S. Loventhal and E. W. Godfrey, individually, two of the three original incorporators of, and stockholders in, the Sanitarium, and E. B. Cook, alleged to have been a stockholder, it is noticeable, have not been made parties. As for C. O. Godfrey, it appears he was a stockholder in the Sanitarium, and a trustee in the Association, and he is the only party in the case who is shown, definitely, to fall within the sweeping averments of the bill. But, the proof is not satisfactory to show, that he acted with any actual fraudulent design. It was manifestly greatly to the interest of the stockholders of the Sanitarium to dispose of their property. It was idle and had failed for the purposes for which it was intended, and liable to great depreciation. Said Godfrey seemed to make ample provision, at the time, to secure the debt, which was the only one the corporation owed, by giving collaterals to the bank, and the course the bank authorities pursued indicates they regarded said debt as protected. He and the stockholders of the Sanitarium acted openly in what they proposed to do in the sale of the property; they held a meeting of the stockholders and agreed to accept the proposition of the Association for the purchase, ordered the sale to be made, and passed a resolution to distribute among the stockholders the bonds to be given for the purchase, and wind up the corporation. The president of the bank that held this debt at the time and its cashier were both stockholders in the Sanitarium; they each knew of what was being done, as it appears, and each received his share of the bonds. The cashier deposes, that the bank did not forbid the sale, but silently acquiesced, and gave no notice of its debts to, and made no demand

on, the Association for it. The deeds were put upon record, disclosing the whole transaction, and in the life time of the bank, for 18 months or more afterwards, these proceedings were not questioned. The trustees of the Association, outside of C. O. Godfrey, appear to have had no interest to subserve in committing a fraud, or other purpose, except to buy the property, by the issuance of the bonds of the purchasing corporation, for the purposes of establishing educational advantages for the children of Fort Payne. And, as to said C. O. Godfrey, as before stated, it is not clear that he was actuated by any bad design. Without reference, however, to any good purposes of the two corporations or its officers, if it were a fact that the parties in the Sanitarium as stockholders sold the property for these bonds, and divided them among themselves, leaving this debt of the complainant unprovided for, it would be a legal fraud on the complainant. No principle is better settled, and more equitable, than that the assets of a corporation are a trust fund for the payment of its debts, vested in the hands of trustees to be preserved by them to secure the creditors of the corporation. As the result of an examination of the authorities on the subject, we can not do better than adopt what Mr. Morawetz has compiled. After stating that if a corporation should become insolvent after having distributed a portion of its capital among its shareholders, or otherwise transferred it without value, its creditors, whose equitable claims had attached before the distribution or transfer, would be entitled to follow the capital, and apply it in payment of their claims, he says : "The same rule applies if a corporation, without providing for its creditors, should transfer its property to another corporation, unless the latter is a purchaser for value ; the corporation receiving the transfer would, in that case, be liable to the unpaid creditors, to the extent of the property received without value. It would be immaterial whether the corporation receiving the property was a stranger to the transferring company, or a new corporation formed by the shareholders of the transferring company to supersede the latter in business, or a corporation formed as the result of a consolidation. In either event, the unpaid creditors would be entitled to set aside the transfer, so far as it was a fraud on their rights. If the corporation was

24

[Fort Payne Bank v. the Alabama Sanitarium *et al.*]

controlled by the same persons as the company executing it, or if the real parties in interest in both companies were substantially the same, the burden of showing that the transfer was made in good faith, for value, would fall on those asserting its validity against unpaid creditors." Shareholders, says Mr. Cook, "are bound to take notice of the true character and condition of the capital stock, and they can not escape liability on account of their ignorance. If a dividend has been paid out of the capital stock, the stockholders are conclusively presumed to have known it, and are liable to an action for a repayment. They can not claim to hold the position of innocent *bona fide* holders."—2 Morawetz on Corp., §§ 790, 791; Angel & Ames on Corp., §§ 599–604; 1 Cook on Stocks & Stockholders, § 548; *M. & W. P. R. R. Co. v. Branch*, 59 Ala. 139; *Smith v. Huckabee*, 53 Ala. 191; *Bank of St. Mary's v. St. John P. & Co.*, 25 Ala. 566; *Jones v. A. M. & A. Co.*, 38 Ark. 27; *Wood v. Dummer*, 3 Mason 308; *Finn v. Brown*, 142 U. S. 56.

3. On the evidence before us, we do not feel authorized to hold, that this deed should be set aside, as being without consideration, fraudulent and void. There is too much averred and too little proved. To authorize relief in such a case, there should be closer agreement between the allegations and proof. The bill, however, should not have been dismissed. Besides the prayer for special relief, there was added the one for general relief, under which, if it were shown that any of the defendants, being stockholders of the Sanitarium, received a dividend in the bonds of the Association, they were liable to be held to account, ratably, to the extent of their holdings, if necessary, for the debt of complainant. Decrees *pro confesso* were rendered against nine who were alleged to be in this category, and the bill should not have been dismissed as to them.

4. We have, at considerable length, and much particularity reviewed the facts as they will be reported, and stated the principles of law governing this case, with the view, that on another trial, the bill may be so framed as to parties, and with fuller and more definite proofs, corresponding with the averments, the court below may make a final disposition of it.

The decree dissolving the injunction is not disturbed; but should the complainant amend its bill and desire

another injunction against the sale by the trustee, and present a case authorizing it, it can make application therefor and it will be granted.

5. The case was not at issue, and the very unsatisfactory proofs taken by deposition, without an agreement to obviate it, will have to be retaken; but this error is not available on appeal to complainant, through whose fault the error was committed.—*Vaughan v. Smith*, 69 Ala. 92.

Reversed and remanded.