(93 South. 33)

PERRINE SAWMILL CO. et al. v. POWELL et al. (3 Div. 542.)

(Supreme Court of Alabama. Feb. 9, 1922. Rehearing Denied May 4, 1922.)

1. Corporations ⟨⟩544(2)—Assets of corporation in hands of another corporation, which exchanged its stock therefor and assumed debts of former, held a trust fund for creditors.

When a corporation conveys its entire assets to another corporation, in exchange for stock in the latter and the assumption of its debts, the assets in the hands of the purchasing corporation constitute a trust fund for the benefit of the creditors of the selling corporation, of whose claims the purchaser had notice at the time of purchase.

2. Corporations ⟨⟩548(7)—Equity ⟨⟩150(1)—Stockholders receiving stock of another corporation for assets of selling corporation are proper parties to suit to impress trust on assets; bill to enforce trust in assets of corporation in favor of creditors not multifarious.

Where a corporation had received, in payment for the transfer of all its assets, stock in the purchasing corporation, which it distributed to its stockholders, the stockholders are proper parties to a suit to impress a trust on the assets sold, and a bill making them parties, and seeking to subject, if necessary, the stock received by them to the payment of a debt of the selling corporation, is not multifarious.

3. Brokers ⟨⟩74—Logging contract held not canceled by purchase of rights of both parties, so that purchaser could be held for commissions to broker based on work done thereunder.

Where a corporation first purchased the rights of the operating corporation in a contract for logging a tract of land, which expressly provided that it should bind the assignees of the parties, and thereafter purchased the rights of the owning corporation in the land by a contract which provided that, until the purchase took effect, the purchaser should continue operations under the logging contract, the logging contract was not superseded or canceled by the purchase, but continued in force, so that the purchaser could be held for commissions to brokers for negotiating the same, based on work done thereunder.

4. Brokers ⟨⟩63(1)—Assignee cannot rescind contract for default in obligations it assumed, and thereby defeat broker as to commission.

Where the corporate assignee of a logging contract subsequently purchased the assets of the owning corporation and assumed its obligations with reference to the contract, it could not declare a forfeiture of the owner's rights under the contract because of the owner's default in the performance of the obligations assumed by the assignee, and thereby defeat the right of the brokers who negotiated the contract to their commission on lumber thereafter cut from the land.

5. Brokers ⟨⟩87—Brokers held entitled to recover commissions on logging contract only for amount cut before trial.

Where brokers, who negotiated a logging contract, were entitled to commission on each 1,000 feet cut under the contract, not exceeding a specified maximum, they can recover in a suit for their commission only the amount to which they are entitled for lumber cut prior to the hearing, not the maximum amount, though the evidence showed there was sufficient timber on the tract to provide the maximum amount of lumber.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Bill by J. B. Powell and another against the Perrine Sawmill Company and others, to declare and enforce a lien under a contract for the sale of certain property. From a decree overruling demurrers to the bill, and granting the relief prayed, respondents appeal. Reversed and remanded, with directions.

George F. Smoot, of Wetumpka, and J. J. Mayfield, of Montgomery, for appellants.

The bill should have been dismissed for want of equity. The court was in error in its decree against either of these appellants, and was in error in decreeing the complainants to have a lien upon or a beneficial interest in the property in question. 54 Ala. 486; 68 Ala. 114; 66 Ala. 64; 54 Ala. 320; 70 Ala. 434; 107 Ala. 321, 18 South. 258; 60 Ala. 239; 59 Ala. 609; 93 Ala. 543, 9 South. 256; 224 Mass. 1, 112 N. E. 493; 106 Ala. 205, 17 South. 525, 28 L. R. A. 707, 54 Am. St. Rep. 31; 168 Ala. 404, 53 South. 71; 6 R. C. L. 921.

Steiner, Crum & Weil and Horace Stringfellow, all of Montgomery, for appellees.

Equity has exclusive jurisdiction to enforce an implied trust, and, having acquired jurisdiction for that purpose, will do complete equity. 74 Ala. 546; 157 Ala. 41, 47 South. 251. The bill makes a case entitling a court of equity to pursue and lay hold of the property at the request of creditors. 59 Ala. 139; 103 Ala. 369, 15 South. 618; 202 Ala. 469, 80

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

South. 853; 145 Ala. 196, 41 South. 143; 112 Mich. 70, 70 N. W. 413; 95 Cal. 524, 30 Pac. 765, 29 Am. St. Rep. 149. The reservation of stock in the Perrine Sawmill Company for the Ensign Company or its shareholders rendered the conveyance void, under section 4287, Code 1907, regardless of the intention. 203 Ala. 397, 83 South. 139; 187 Ala. 189, 65 South. 538; 75 South. 387. The rescission of the contract could not affect the right of third parties which had accrued thereunder. 14 La. 43, 33 Am. Dec. 573; 9 Cyc. 636; 166 Ala. 308, 51 South. 964; 170 Ala. 504, 54 South. 203; 13 C. J. 541.

MILLER, J. This bill of complaint was filed by J. B. Powell and J. W. Farrior against the Ensign Yellow Pine Company, a corporation, E. G. Ensign, as trustee for it, the Perrine Sawmill Company, a corporation, and others, to have the court declare that certain property therein described is held in trust by the Perrine Sawmill Company as security for compensation agreed to be paid complainants, and that they have a lien on the property for their compensation according to their contract. Powell and Farrior had a verbal contract with the Ensign Yellow Pine Company and Ensign, as trustee, to aid them in securing some person or corporation to lease their sawmill plant and to cut, haul, and manufacture into lumber their timber located in Elmore county. Complainants, if successful, were to receive 25 cents per 1,000 feet as the timber was manufactured into lumber by the person or corporation secured by them.

Complainants effected a lease of the mill plant and sale of the timber to the Coosa Mill Company, a corporation, at a price and on terms agreed to by the Ensign Yellow Pine Company and Ensign, as trustee. This agreement between the Coosa Mill Company and the Ensign Yellow Pine Company and Ensign, as trustee, was reduced to writing, subscribed by the parties, and a copy of it is in evidence. It is dated December 12, 1917. They sell and convey to the Coosa Mill Company the right to take, log, and manufacture all of the merchantable timber on certain lands, particularly described in the contract, in Elmore county. As to some of the lands described they own the land and the timber growing thereon, and as to some of the land they only own the growing standing timber on it. They let and lease to the Coosa Mill Company for not exceeding 20 years, as may be necessary for the performance of the contract, their entire sawmilling plant, situated on a part of the land described. The Coosa Mill Company agrees to cut, log, and manufacture the merchantable timber as fast as the same reasonably may be done by the use of the aforesaid milling plant, subject to the delays provided for in the contract, and it is to pay for the timber and use of the mill plant on the 15th of each

month, commencing with January 15, 1918, for all lumber shipped out during the next preceding calendar month at the rate of $5 or $5.50 per 1,000 superficial feet, according to the different locations of the timber specified in the contract, which was cut and manufactured into the lumber. On February 15, 1918, the verbal contract of Farrior and Powell with the Ensign Yellow Pine Company and Ensign, as trustee, was modified, put in writing, and signed by the parties. It reads as follows:

"State of Alabama, County of Elmore.

"This agreement, made and entered into by and between Ensign Yellow Pine Company, Inc., as party of the first part, and J. B. Powell, of Greenville, Ala., and J. W. Farrior, of Birmingham, Ala., as party of the second part, witnesseth:

"That for and in consideration of valuable help rendered by party of the second part to party of the first part in making sale of their timber holdings to Coosa Mill Company, party of the first part agrees to pay from the monthly payments received by it from Coosa Mill Company, which payments cover the lumber shipped by Coosa Mill Company for the month previous, the sum of 10 cents per 1,000 feet to each of the parties of the second part; that is to say, that the total amount of commission to be paid to parties of the second part is 20 cents per 1,000 feet on lumber shipped, and the payments to be made monthly on or about the 15th of each month for the lumber shipped during the preceding month, and said payments to be made from month to month on lumber shipped by said company to an amount of 225,000,000 feet, after which no further payments shall be made to either of the parties of the second part, and the payments being made as above it is understood and agreed are to cover fully the payment to each and both of the parties of the second party due on account of their services rendered in connection with said sale to Coosa Mill Company.

"It is understood and agreed that, in case Coosa Mill Company, their successors or assigns, do not cut as much as 225,000,000 feet of lumber, that for whatever amount they do cut and party of the first part has paid to party of the second part said 20 cents per 1,000, it shall be considered as payment in full for everything owing party of the second part on said commission; it being the intention hereof to pay to party of the second part the sum of 20 cents per 1,000 feet on all lumber manufactured and shipped by Coosa Mill Company under contract now existing between them and party of the first part, not to exceed 20 cents per 1,000 on 225,000,000 feet, and in case Coosa Mill Company do not manufacture that amount, the sum of 20 cents per 1,000 on whatever amount they do manufacture is to be payment in full for said commission.

"It is further agreed and understood that, if for any reason party of the first part shall be obliged to cancel their contract with the Coosa Mill Company, their successors or assigns, or said Coosa Mill Company, their successors or assigns, shall cancel said contract, then in that case party of the first part shall not pay party

of the second party for any lumber cut, except such as has been cut by said Coosa Mill Company, their successors or assigns, in accordance in every respect with the contract entered into by and between Ensign Yellow Pine Company, Inc. and Coosa Mill Company, dated December 12, 1917.

"It is understood and agreed that, if Coosa Mill Company, their successors or assigns, shall pay Ensign Yellow Pine Company, Inc., their successors or assigns, damages on account of the cancellation of said contract of December 12, 1917, that in that event party of the second part shall be entitled to receive 5 per cent. commission on the net amount of said damages so received, after deducting any cost incurred by Ensign Yellow Pine Company, Inc., in adjusting said damages.

"This agreement to bind the heirs, executors, successors, and assigns of the parties of the first and second parts.

"Witness our hands and seals this 15th day of February, 1918.

> "Ensign Yellow Pine Company, Inc.,
> "By E. G. Ensign, Treasr.
> "E. G. Ensign, Trustee.
> "J. B. Powell.
> "J. W. Farrior.

"Attest:
> "W. A. Strider,
> "J. G. Thompson,
> "For J. B. Powell and J. W. Farrior."

The bill avers that the Coosa Mill Company, under its contract of purchase and lease of the property, cut, hauled, and manufactured into lumber over 5,000,000 feet from the timber upon which the complainants, under their contract, as part of their compensation for selling the property to the Coosa Mill Company, were entitled to 20 cents per 1,000 feet. The complainants aver under their contract that they are entitled to the sum of $45,000 for their services in effecting the sale of the property to the Coosa Mill Company, and that they have received no part of the same, except about $400, and the remainder is now due and unpaid. The complaint further avers that on, to wit, December 2, 1918, the Coosa Mill Company sold and conveyed, with the consent of Ensign Yellow Pine Company and Ensign, as trustee, to the Perrine Sawmill Company, a corporation, all of its rights and claims under its contract, except the lumber at the mill and logging teams, and the Coosa Mill Company cut and manufactured into lumber thereafter no more timber under the contract.

"The bill avers that on January 20, 1919, the Ensign Yellow Pine Company and Ensign, as trustee, and E. G. Ensign, executed a conveyance to the Perrine Sawmill Company of all the property of the Ensign Yellow Pine Company owned in its name and in the name of Ensign, as trustee, including, in part, the property embraced in the said contract with the Coosa Mill Company. A copy of the deed is attached as an exhibit to the bill. The consideration named is $1 and other good and valuable consideration. The complaint avers that it is unknown, but they aver on information that the real consideration for the conveyance was for part payment of capital stock of the Perrine Sawmill Company, in an amount unknown, which was distributed to the shareholders of the Ensign Company, and an agreement by the Perrine Sawmill Company to pay the liabilities of the Ensign Yellow Pine Company, except its liabilities under the Lancaster agreement. The complaint further avers that the stockholders of the Ensign Yellow Pine Company were the stockholders of the Perrine Sawmill Company, that the names of all of them are unknown to complainant, that E. G. Ensign, Joseph M. Perrine, Frost & Davis Lumber Company, or the members of said firm, are the names of some of the stockholders in the Ensign Yellow Pine Company that received by the conveyance stock in the Perrine Sawmill Company. The complainants aver that all of said persons had notice of the existence of their agreement with the Ensign Yellow Pine Company for their services, and the liability of the Ensign Yellow Pine Company under the contract with complainants.

There were demurrers to the bill. They were overruled by the court.

[1] In case of Ft. Payne Bank v. Ala. Sanatorium Co., 103 Ala. 358, 369, 15 South. 618, 621, this court wrote:

"No principle is better settled, and more equitable, than that the assets of a corporation are a trust fund for the payment of its debts, vested in the hands of trustees, to be preserved by them to secure the creditors of the corporation."

In Montgomery & W. P. R. R. Co. v. Branch, 59 Ala. 153, this court wrote:

"A private corporation, chartered to transact business, is a trustee of its capital, property, and effects, first for the payment of its creditors, and afterwards for the benefit of its stockholders. True, while it continues in life and operation according to the design of its charter, its general creditors have no specific lien which would entitle them to sue it in a court of equity. Yet during that time its property and effects, which the law presumes would not be dishonestly put out of reach, are liable and might be subject to the payment of its debts by action at law against it, if not paid voluntarily. But if, leaving its debts unpaid, its capital, property, and effects are distributed among its stockholders, or transferred for their benefit to third persons, who are not bona fide purchasers without notice, and still more, if the corporation be dissolved or becomes so disorganized that it cannot be made answerable at law, then a court of equity will pursue and lay hold of such property and effects, and apply them to * * * what it owes to its creditors."

In this case this court also wrote:

"There is no question of innocent purchaser for value without notice in this case. No party defendant can claim or does claim that charac-

ter. The existence of the debts was not only known to the Western Railroad Company, but it expressly assumed to pay them all. And such an agreement, coupled with the acquisition in the same transaction of all of the property out of which they were payable, and a consequent dissolution of the debtor company to which the promise was made, would itself probably create a lien on the property acquired, as well as bind the Western Railroad Company personally, for the payment of these debts. Vanmeter's Ex'x v. Vanmeter, 3 Grat. 162.''

In the case of Adams v. Perryman & Co., 202 Ala. 469, 80 South. 853, it is said by this court:

'' 'It is a favorite doctrine of the American courts that the capital stock and other property of a corporation are to be deemed a trust fund for the payment of the debts of the corporation, so that the creditors have a lien upon, or right of priority of payment out of it, in preference to any of the stockholders of the corporation.' 10 Cyc. 653, B; Smith v. Huckabee, 53 Ala. 191, 195; Bank, etc., v. St. John, 25 Ala. 566, 612; O'Bear Jewelry Co. v. Volfer, 106 Ala. 205, 223, 17 South. 525, 28 L. R. A. 707, 54 Am. St. Rep. 31. This principle of the preference of creditors over stockholders is of course applicable to all corporations, whether solvent or insolvent, and is wholly independent of the general 'trust fund' theory, now established by statute (Code, § 3509), with respect to insolvent corporations. O'Bear's Case, 106 Ala. 205, 223, 17 South. 525, 28 L. R. A. 707, 54 Am. St. Rep. 31. The reason for it is well stated in Sanger v. Upton, 91 U. S. 56, 23 L. Ed. 220: 'The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private copartnerships. When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied otherwise than upon their demands until such demands are satisfied. The creditors have a lien upon it in equity. If diverted they may follow it as far as it can be traced, and subject it to the payment of their claims, except as against holders who have taken it bona fide for a valuable consideration and without notice.' 'In the absence of special statutory provisions this trust fund can in general be reached only by appropriate proceedings in equity.' Spear v. Grant, 16 Mass. 9; 10 Cyc. 655, 4.''

The complainants are creditors of the Ensign Yellow Pine Company. They aver its entire assets have been assigned and conveyed to the Perrine Sawmill Company. The Perrine Company in consideration therefor agreed to pay its debts and transferred to it some of its stock. This stock was distributed by the Ensign Company among its stockholders. It does not aver in so many words that it is insolvent. It has no assets. It has liabilities. It has by this conveyance and by the distribution of the Perrine Company stock among its stockholders become so disorganized that it cannot be made answerable at law for its debts. Hence a court of equity will permit complainants to pursue and lay hold of such property, and apply it to the payment of the debts of the complainants; the grantee in the deed having purchased it with notice of their claim, and agreeing in consideration of the conveyance to pay the debts of the grantor. Adams v. Perryman, 202 Ala. 469, 80 South. 853; Montgomery & W. R. R. Co. v. Branch, 59 Ala. 139; Ft. Payne Bank v. Ala. Sanatorium, 103 Ala. 369, 15 South. 618; Hutchinson v. Nat. Bk. of Com., 145 Ala. 196, 41 South. 143.

[2] The stockholders of the Ensign Company, who received stock in the Perrine Company in consideration of the transfer and sale of the entire assets of the Ensign Company to the Perrine Company, are proper parties to this suit. The complainants, creditors of the Ensign Company, should be paid from its assets before the stockholders should receive any benefit from the sale of the entire property. The creditors have a priority of payment and a preference over any stockholder out of the assets of the corporation. If the property conveyed is insufficient to pay the debts, then the stock received by the stockholders would be liable for the debts. Hence the bill was not multifarious in making them parties and in seeking to subject, if necessary, their stock in the Perrine Company so received by them to the payment of the debt due complainants by the Ensign Company. Adams v. Perryman, 202 Ala. 469. 80 South. 853, and authorities supra; Allen v. Montgomery R. R. Co., 11 Ala. 437. There is equity in the bill. It is not multifarious. The demurrers to it were properly overruled.

The answers of respondents admit that the consideration of the conveyance by the Ensign Company to Perrine Company was the assumption by the Perrine Sawmill Company of various and sundry obligations of the Ensign Yellow Pine Company, and the issuance of 2,920 shares of common stock of the Perrine Sawmill Company to the Ensign Yellow Pine Company; that the stockholders of the Ensign Yellow Pine Company became stockholders of the Perrine Sawmill Company through the distribution by the Ensign Yellow Pine Company among its stockholders of the said 2,920 shares of the Perrine Sawmill Company issued to the Ensign Yellow Pine Company as aforesaid; but they aver the ownership of the Perrine Sawmill Company differed from the ownership of the Ensign Yellow Pine Company. The Perrine Company sold other shares of stock for cash and for other consideration, and had outstanding 400 shares of common stock and 1,000 shares of preferred stock of the value of $100 each, and the stockholders in the Ensign Company did not hold stock in the Perrine Company in the same proportion as they held stock in the Ensign Company. The Perrine Sawmill Company deny that they had any notice of contract of complainants with the Ensign

Company. They deny that the contract of the Coosa Mill Company with the Ensign Company was a contract for the purchase of property. They aver there was no consideration for the agreement with the complainants. The Ensign Yellow Pine Company in its answer also avers:

"That, if the complainants are entitled to anything, they are entitled to recover only on lumber cut by Coosa Mill Company during its operation of the mill, and respondents aver that the Coosa Mill Company did not operate the mill under the contract after December 1, 1918. Respondents aver that the Ensign Yellow Pine Company, Inc., and said Coosa Mill Company, were unable to agree as to the carrying out of said contract, and that a compromise was effected between them, whereby the Perrine Sawmill Company paid the Coosa Mill Company $25,000 and other considerations, taking an assignment from Coosa Mill Company of its rights, and Perrine Sawmill Company then purchased from Ensign Yellow Pine Company, Inc., all its assets, and thereby the contract became extinct."

It avers:

"That the Perrine Sawmill Company did not operate under said agreement in cutting timber or lumber."

The Perrine Sawmill Company in its answer also avers:

"Respondents aver that the Ensign Yellow Pine Company, Inc., and Coosa Mill Company were unable to agree as to the carrying out of said contract, and that a compromise was effected between them whereby Perrine Sawmill Company paid the Coosa Mill Company the sum of $25,000 and other consideration, taking an assignment from Coosa Mill Company of its rights and Perrine Sawmill Company then purchased from the Ensign Yellow Pine Company, Inc. all its assets, and thereby the agreement between Coosa Mill Company and Ensign Yellow Pine Company, Inc., became extinct, and that Perrine Sawmill Company did not operate under the said agreement in cutting timber or lumber."

The contract between complainants and the Ensign Yellow Pine Company has this clause in it:

"This agreement to bind the heirs, executors, successors, and assigns of the parties of the first and second parts."

Either party could assign their interest and it would be binding on the assignee. The contract between the Ensign Yellow Pine Company and the Coosa Mill Company contains this in section 15:

"This agreement shall bind and run in favor of, not only the parties hereto, but also their respective successors and assigns."

Either party had the authority and right to sell or assign its interest in the contract, and the assignee was bound by its terms and conditions. The contract was dated December 12, 1917. The Coosa Mill Company agreed in the contract to pay the Ensign Yellow Pine Company $5 or $5.50 (according to the location of the timber) per 1,000 feet, superficial measure, monthly as it is cut, manufactured, and shipped. On February 15, 1918, the Ensign Yellow Pine Company agreed to pay complainants out of each $5 or $5.50 per 1,000 feet received by it, under the Coosa Mill Company contract, monthly the sum of 20 cents until complainants received pay for 225,000,000 feet. The complainants, by their contract, were interested to that amount in the contract with the Coosa Mill Company. Complainants then owned an interest in the income of the Ensign Yellow Pine Company from the Coosa Mill Company contract. It agreed to pay complainants—

"from the monthly payments received by it from the Coosa Mill Company, which payments cover the lumber shipped by Coosa Mill Company for the month previous."

The bill avers and the proof shows that the Coosa Mill Company cut and manufactured into lumber more than 10,000,000 feet; that complainants have received only $400, and there is still due them over $600. Has the contract of the Coosa Mill Company with the Ensign Yellow Pine Company been legally canceled, become extinct, or is it still binding between the parties or their assigns?

[3] In November, 1918, the Coosa Mill Company, in written contract with the Perrine Sawmill Company for a consideration of $25,000, and its agreeing to procure a conveyance to the Coosa Mill Company of all the rights of the Ensign Company and Ensign, as trustee, under the agreement with the Vizard Investment Company, sold all of its rights under its contract with the Ensign Yellow Pine Company to the Perrine Sawmill Company, except "the lumber at the mill and logging teams." At this time it appears the Perrine Sawmill Company and the Coosa Mill Company regarded the contract of the Coosa Mill Company with the Ensign Yellow Pine Company as still binding between the parties or its assignee, not extinct, not canceled, and not forfeited. By this purchase of the contract rights of the Coosa Mill Company, it became the duty of the Perrine Sawmill Company to cut, haul, and manufacture into lumber the timber, and to pay monthly to the Ensign Yellow Pine Company the $5 or $5.50 for each 1,000 feet cut according to the Coosa Mill Company contract. The Perrine Sawmill Company was then, under the contract, the assignee of the Coosa Mill Company. The duties and obligations of the Coosa Mill Company under the contract were assumed by the Perrine Sawmill Company.

On December 16, 1918, a written contract was entered into between the Ensign Yellow

Pine Company and the Perrine Sawmill Company. The former conveyed and sold to the latter as of December 2, 1918, all of its property, particularly described therein. The consideration was that the Perrine Company agreed to pay all lawful debts of the Ensign Company in relation to its logging and sawmill business, except any liability under its agreement with Mrs. Lancaster and others, and to assume and discharge all lawful liens against said property, and to deliver to it 2,920 shares of its stock. The contract contains this clause:

"The company [Perrine Sawmill Company] having already purchased from Coosa Mill Company all the right of said Coosa Mill Company under its contract with the vendor [Ensign Yellow Pine Company] and all claims which said Coosa Mill Company has against the vendor [Ensign Yellow Pine Company], it is agreed that until this agreement becomes effective as provided in paragraph VI above, the company [Perrine Sawmill Company] shall operate the said milling plant and industry of the vendor [Ensign Yellow Pine Company] at Wetumpka, Ala., and the logging of timber, etc., under the said contract between the vendor [Ensign Yellow Pine Company] and Coosa Mill Company, such operation to begin as soon as practicable. When, however, the sale and purchase provided for in this agreement becomes effective as provided in paragraph VI above and has been consummated, then such operation of said plant and industry, etc., from the commencement thereof by the company [Perrine Sawmill Company] shall be deemed to have been made by it under this agreement of purchase from the vendor [Ensign Yellow Pine Company], and the company [Perrine Sawmill Company] shall thereupon execute and deliver to the vendor [Ensign Yellow Pine Company] a release, releasing the vendor [Ensign Yellow Pine Company] from claims of any nature whatsoever arising under its contract with Coosa Mill Company."

Section VI of the contract provided that the agreement shall not become effective until the Perrine Sawmill Company shall have procured from the capital issues committee approval of its proposed issues of shares under Act of Congress of April 5, 1918, or until the act has ceased to be in operation. Thus it clearly appears that the Perrine Sawmill Company and the Ensign Yellow Pine Company by this agreement considered the contract of the Coosa Mill Company, which had been assigned by the Coosa Mill Company to the Perrine Sawmill Company as an existing contract at the time of their agreement. The Perrine Sawmill Company by this contract assumed the obligations of the Ensign Yellow Pine Company under said contract with complainants. The Perrine Sawmill Company, after the execution of this contract, was obligor and obligee under the contract of the Coosa Mill Company with the Ensign Yellow Pine Company. It was the one to cut, haul, and manufacture the tim-

ber into lumber, and it was the one to receive thereunder the $5 or $5.50 per 1,000 feet, and it was the one to pay the 20 cents out of each $5 or $5.50 per 1,000 feet, which belonged to the complainants. This 20 cents should be paid by it to complainants as the contract provides. The evidence shows that the Perrine Sawmill Company knew or had notice of complainants' - contract with the Ensign Yellow Pine Company.

[4] On January 18, 1919, the Perrine Sawmill Company sent or delivered the following notice to the Ensign Yellow Pine Company and Ensign as trustee:

"Montgomery, Alabama, Jan. 18, 1919.
"To Ensign Yellow Pine Company, Inc., and E. G. Ensign, as trustee:

"Perrine Sawmill Company, as assignee of the rights of Coosa Mill Company, under a certain agreement made between you and Coosa Mill Company on the 12th day of December, 1917, hereby notifies you that because of breaches of the said agreement, which breaches consist of your failure to make the necessary payments to Douville Timber Land Company, W. A. Neal, and Louisville & Nashville Railroad Company, whereby you have become in default under your agreement with said parties, and your failure to make the necessary payments to Clyde Iron Works, whereby you have become in default under your contract with said Clyde Iron Works, and because of other breaches of said agreement, all your rights under the said agreement made on the 12th day of December, 1917, between you and Coosa Mill Company have become forfeited, and the said agreement is hereby canceled.
"Perrine Sawmill Company,
"[Seal.]    By Joseph M. Perrine, President."

At this time the Perrine Sawmill Company was obligee and obligor under that contract. It owned the entire interest of each party to it, subject to the rights of complainants. It was agreed that the contract was to take effect as of December 2, 1918. The Perrine Sawmill Company had been operating the mill under the Coosa Mill Company contract. The Perrine Sawmill Company had agreed to pay all the liabilities of the Ensign Yellow Pine Company, except that of Mrs. Lancaster. The duty or obligation at this time rested on the Perrine Sawmill Company, and not on the Ensign Yellow Pine Company, to make the payments under the Coosa Mill Company contract, and the contract could not be rescinded or annulled by the Perrine Sawmill Company for failure to perform an obligation that rested at that time on it. "The party insisting on the forfeiture must not be himself in default." 13 Corpus Juris, p. 608, § 643, headnote 45. "A contracting party cannot, of course, rescind the contract because of his own breach, fault, or wrong." Ala. Tailoring Co. v. Judkins, 205 Ala. 601, 88 South. 865. It is clear from the evidence that this contract was not annulled or forfeited.

The admissions in the answers, the documentary evidence, and the testimony of witnesses sustain by their weight the allegations of the bill of complaint and entitle complainants to relief. It will serve no good purpose to analyze the testimony and set out different parts of it showing the correctness of this conclusion.

The transfer of the Vizard timber to the Coosa Mill Company did not necessarily prevent the performance by the Perrine Sawmill Company, in whole or in part, of the contract of the Coosa Mill Company and the Ensign Yellow Pine Company. There may be sufficient timber, not including the Vizard timber, to make 225,000,000 feet, the required maximum amount for which complainants are to receive 20 cents per 1,000 monthly as it is cut, manufactured into lumber, and shipped. The Perrine Sawmill Company is under obligation as assignee of the Coosa Mill Company to cut, haul, and saw the timber under the Coosa Mill Company contract, as it provides, and it is under obligation, as assignee of rights of the Ensign Yellow Pine Company and under its contract with the Ensign Yellow Pine Company to pay the complainants monthly, on the 15th of each month, 20 cents for each 1,000 feet, as complainants' contract directs, of lumber shipped during the preceding month until the amount of 225,000,000 feet is reached.

[5] The complainants are entitled to recover of the Perrine Sawmill Company now only 20 cents on each 1,000 feet of timber which has been cut, manufactured into lumber, and shipped by the Coosa Mill Company, and also by the Perrine Sawmill Company, with the interest thereon from the time the different amounts were due, less the $400 which has been paid to complainants. The court rendered decree in favor of complainants for $48,510 against the Perrine Sawmill Company. This was full damages for the breach of the entire contract. This was error. The court should order a reference to ascertain the amount now due complainants under their contract in accordance with this opinion, and render decree accordingly.

Reversed and remanded, with directions.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.