## JEFFERSON v. HALE, adm'r.

1. PLEADING: *Allegations of value in trover.*

   In an action of trover, the failure to allege the value of the property converted, will be cured by a verdict for the plaintiff.

2. TROVER: *Burden of, proof in.*

   Where scrip was deposited with a bailee, for safe keeping, proof of the bailment, in an action of trover for its conversion, does cast on the bailee the burden of showing a re-delivery to the bailor, the plaintiff must prove the conversion as well as the bailment.

3. DAMAGES: *Measure of, in trover.*

   The measure of damages in an action of trover, is the value of the property at the time of its conversion.

APPEAL from *Mississippi* Circuit Court.

Hon. L. L. MACK, Circuit Judge.

*Palmer,* for appellant.

*Adams, contra.*

HARRISON, J.:

This was an action by W. P. Hale, administrator of Josiah B. Murray, deceased, against J. T. Jefferson, surviving partner of the firm of Jefferson & Edrington, to recover the value of certain Arkansas State warrants, or scrip, and Mississippi County scrip—$5,000 of the former, and $2,000 of the latter—deposited by his intestate with said firm and converted by them to their own use.

The State warrants were alleged in the complaint, to be worth sixty-five cents, and the county scrip, eighty-five cents on the dollar.

The defendant's answer denied only the bailment, or that such deposit had been made with them, and the alleged values of the scrips.

The case was submitted to a jury, which returned a verdict for the plaintiffs, for $5,268.75.

Motions for a new trial, and in arrest of judgment, were filed by the defendant, and overruled; and he appealed.

The cause assigned in arrest of judgment, was the very indefinite one; that the complaint was not sufficient in law to support a judgment.

The particular objection, however, urged by the appellant's counsel here, is, that the value of the scrips, at the time of conversion, was not averred.

This objection we consider, not true in point of fact. The averment of the values of the scrips, was not restricted to the time of bailment, and applied as well to the time of conversion as to that; and had there been no averment as to the value, at all, the omission would not have been fatal to the action, for a good cause, though defectively stated, would, nevertheless, have been shown, and the verdict would have cured the defective statement. 1 Chit. Plead., 673; *Sevier* v. *Holliday*, 2 Ark., 513; *Martin* v. *Webb*, 5 Ark., 73; *Fry* v. *Baxter*, 10 Mo., 302; *Colbrook* v. *Merrill*, 46 N. H., 160.

The motion for a new trial was upon two grounds:

*First*—That the court gave, at request of the plaintiff, an erroneous instruction to the jury; and,

*Second*—That the verdict was contrary to the evidence.

The evidence, or so much thereof as is material to be stated, was as follows:

J. B. Best, testified for plaintiffs : That, Josiah B. Murray and himself were in Memphis, on the 10th of June, 1872, and that Murray came to his room at the hotel, on the morning of tha day, to ascertain from him the amounts of money, State scrip, and county scrip, injoined in his, Murray's, hands ; witness was, at the time, clerk of Mississippi County, and it appears else-where in the evidence in the case, that Murray was sheriff. Witness gave him the estimated amount of each, and Murray then took from his satchel a lot of State and Mississippi County scrip, and he and witness counted from it the requisite amount, about $2,600 of each kind, and put the same in two packages. Witness then, at Murray's request, counted the remainder of the scrip.   There were about $5,000 of the State, and a little over $2,000 of the county.   After he had counted it, he put that also in two packages, which he pinned together so as to make one.

They then went to Jefferson & Edrington's, whilst there, Murray loaned Jefferson & Edrington $5,000, for which they gave him an acknowledgment or obligation.   The defendant handed the money to Mr. Bills, their book-keeper, to take to the bank ; and as he was about starting, Murray said to him ; "Hold on ; I will go with you, and deposit this package of scrip." Edrington and the defendant both said, that there was no use to go to the bank ; that they had a good safe, which was both fire and burglar proof, and it would be as safe there as at the bank, Murray thereupon handed the package, the same that contained the remainder of the scrip, after the $2,600 of State, and the $2,600 of county, or thereabouts, had been taken out, $5,000 of State scrip, and $2,000 of county scrip, to the witness, who handed it to the defendant, and he put it in the safe.

The witness and Murray left the office of Jefferson & Edring-ton, about 3 or 4 o'clock that evening, and were together the whole of that afternoon.   They came up home on the same boat,

and Murray was never again in Memphis; he died on the 4th of September following.

He further testified that Arkansas State warrants, or State scrip, was worth at that time sixty-five cents, and Mississippi County scrip from eighty-five to eighty-seven and a half cents on the dollar.

And, also, that he, in March, 1874, met Bills, the bookkeeper of Jefferson & Edrington, in Memphis, and asked him what had become of the scrip, and he told him that it had been delivered to John Matthews; and he also saw the defendant, and asked him the same question, and he gave the same answer. Matthews, when he heard that they said the scrip had been turned over to him, denied it, and he and the witness went to Memphis to see the defendant and Bills about it. At first they insisted it had been delivered to Matthews; but after considerable conversation and some words, they admitted it had not been. This witness, it appears, married the widow of Murray.

The plaintiff testified that he demanded the scrip of the defendant, on the 14th of April, 1875, the day, but before, the suit was brought. He said he knew nothing about it; if it was ever left with them Edrington got it.

John Matthews testified, for the defendant, that Murray was mortally wounded in a difficulty with one Fitzpatrick, in the latter part of August, 1872, and died on the 4th of September thereafter. When wounded he was carried to the witness' house. A short time after he had been there, he said to the witness he wished him, if he should die, to settle up his business. After it became apparent that he would die, his physician asked him if he desired witness to administer upon his estate, and he replied that he did. Witness then drew up a chair to the lounge upon which he was lying, and requested him to give him a statement of such matters of his business that he had no written evidence

of, with everybody he owed, and everybody owing him. He gave a statement of several matters, which the witness reduced to writing; and, asking him for his papers, which had been put away after he had been brought to the house, he handed witness a receipt of Jefferson & Edrington for $5,000 loaned them, and told him he would find, in a pigeon-hole in top part of his secretary at his house, State and county scrip, and that his books and papers there would show all his other business. After his death, he procured from his widow the keys of his secretary, and found in it two packages of State and county scrip.

On account of the disorders and troubles then existing in the county, he put the two packages, with other scrip belonging to different persons, and his own books and papers, in a box and sent them to Memphis. The box was left at the store of Jefferson & Edrington. After the troubles in the county were over, he went to Memphis and got the box. He took all the scrip out, and carried it, Jefferson going with him, and deposited it in the bank. Sometime afterwards, he withdrew it from the bank, and with the exception of some belonging to ———— Edrington, brought it home. The same evening he returned home, he, in the presence of Murray's widow, opened the two packages he found in the secretary, and counted the scrip in them, which corresponded with the amounts endorsed by Murray on the packages, the whole about $7,000—about $3,200 in State, and the remainder in county. He was then administrator of Murray's estate, and he paid out about $2,500 in the two kinds of scrip, to the sheriff, on account of the taxes that had been enjoined, by order of the County Court, and turned the remainder over to the plaintiff, who succeeded him in the administration.

Nelson A. Bills testified, for defendant, that he was book-keeper for Jefferson & Edrington, on the 10th of June, 1872, the time of the alleged deposit of the scrip with them, and until

December of that year ; and he had no knowledge of any scrip having been left with them by Murray ; that he handled all the means of the house, and would certainly have known it if it had been done.

The instruction to the jury complained of was as follows:

" If you find from the evidence that Jonah B. Murray delivered to Jefferson & Edrington the scrips, mentioned in the complaint, for safe keeping, and that the defendant is the surviving partner of said firm of Jefferson & Edrington, then it is incumbent on him to show, by proof, that they were re-delivered to him, or his administrator ; and, unless he has so shown, you will find for the plaintiff; and will assess his damages at the value of the scrips, as shown by the proof, with interest thereon at six per cent. per annum from the time demand was made therefor."

This instruction was evidently wrong. The burden of the proof was upon the plaintiff, who, to maintain his action, was required to establish by evidence every material allegation of his complaint not acknowledged by the defendant's answer, and it was as requisite for him to prove the conversion of the scrip as it was the bailment of it; and proof of the bailment did not dispense with proof of the conversion, or cast upon the defendant to exonerate himself from liability, the burden of proving that he had re-delivered it, or, in other words, had not converted it.

The measure of damages, in cases like the present, is the value of the property at the time of the conversion, as held in *Reyburn* v. *Pryor*, 14 Ark., 505.

But inasmuch as the case must, for the error just shown, be reversed, and remanded for a new trial, we do not think it worth while to express an opinion in further notice of the instruction, whether the value, at the time of the deposit, if proven, was so continuing as to afford a presumption as to the value, three years after, at the time of the alleged conversion.

Nor need we, for the same reason, say anything concerning the sufficiency of the evidence to warrant the verdict, or the other ground assigned in the motion for a new trial.

The judgment of the court below is reversed, and the cause remanded to it, with instructions to grant the defendant a new trial, and to proceed according to law, and not inconsistent with this opinion.