## McWILLIAMS v. EXCELSIOR COAL CO.

## CUNNINGHAM v. SAME.

(Circuit Court of Appeals, Eighth Circuit. April 15, 1924.)

Nos. 6402, 6463.

1. **Corporations ⬳625—Creditor of dissolved corporation may follow assets into hands of stockholders.**

A creditor of a dissolved corporation may follow assets thereof, as in the nature of a trust fund, into the hands of stockholders, and where the debt was not judicially established by action against the corporation before its dissolution, it may be presented and its validity determined in the equitable suit to enforce such liability of the stockholder.

2. **Trusts ⬳357(2)—One taking trust property with notice is liable as trustee.**

One who takes trust property with notice stands in the position of a trustee, and is subject to an equitable suit for an accounting or for enforcement of the trust even where the trust property has been destroyed, and where it has been used by him for his own purposes, or disposed of by him, he may be held personally liable for its full value in such equitable suit.

3. **Corporations ⬳625—Stockholders, who on dissolution of the corporation received and used its property, held liable to a creditor for its value.**

Where, on dissolution of a corporation, its property, consisting of machinery and equipment for coal mining, was turned over to the stockholders, who continued to use it in mining for their own profit, to its deterioration, a creditor of the corporation may hold them individually liable for its value when received.

4. **Equity ⬳87(1)—Laches not controlled by statutes of limitation.**

Laches is an equitable doctrine, akin to estoppel, and is not controlled by statutes of limitation nor dependent on mere lapse of time.

5. **Equity ⬳70—Laches not imputable to party until he has knowledge of facts affecting his rights.**

Laches cannot exist unless and until a party has legal knowledge of the facts affecting his rights.

6. **Mines and minerals ⬳49—Party concealing coal-mining operations under land from adverse claimant not in open and notorious possession.**

A coal-mining company cannot be held in the open, notorious, adverse possession of the coal underlying land, necessary to give it title by prescription, where, on being sued for trespass thereon, it compromised the suit and promised to commit no further trespass, and thereafter concealed its operations from the adverse claimant of title.

7. **Corporations ⬳625—Stockholders of dissolved corporation held chargeable with interest on recovery by creditor of corporation.**

Under the law of Arkansas, which permits recovery of interest on unliquidated claims from the date when liability accrues, stockholders of a dissolved corporation, who received and used its assets for their own profit, are properly chargeable with interest from the time of their receipt, on recovery of its value by a tort creditor of the corporation.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Suit in equity by the Excelsior Coal Company against M. M. McWilliams, William Cunningham, and others. Decree for complainant, and defendants McWilliams and Cunningham separately appeal. Affirmed.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Jesse Reynolds, of Clarksville, Ark., for appellants.

Joseph M. Hill, of Ft. Smith, Ark., and George O. Patterson, of Clarksville, Ark. (Henry L. Fitzhugh, of Ft. Smith, Ark., on the brief), for appellee.

Before STONE and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

STONE, Circuit Judge. This is a bill for discovery, accounting and recovery of damages for coal unlawfully mined from complainant's property. The trespass was committed by the Smokeless Anthracite Coal Company. That company having dissolved and its assets been distributed to its five stockholders, this complaint was brought against those five individuals as stockholders receiving the assets of the dissolved corporation. Recovery was allowed against each stockholder to the extent of the value of the corporate assets coming into his hands with interest. The total amount recovered was less than the damages found by the court to have been suffered. From this decree these two separate appeals by two of the stockholders are brought and are consolidated for presentation here.

The pleadings and evidence reveal the situation following: The Smokeless Company and appellee owned adjoining coal mine properties in the state of Arkansas during the years 1916–1921, inclusive. The mine shaft of the Smokeless Company was close to the boundary line between the two properties. In the summer of 1916, the Smokeless Company mined coal across on appellee's property. Upon discovery thereof, appellee promptly brought action in the state court for damages and to prevent further encroachments. Officers of the Smokeless Company promised to commit no further trespass, negotiations went forward for settlement of the damage done and the suit was abandoned. Shortly before the present action was filed, in February, 1921, appellee discovered that the depredations had continued and a large amount of coal been taken. Thereupon, this suit resulted. At the time the Smokeless Company dissolved, the assets, distributed to the five stockholders in equal amount, were worth $40,000 or more.

The issues presented here are as follows:

(1) That this action could be brought only against the corporation and not against the stockholders.

(2) That, in any event, the most that complainant could do would be to follow the assets of the corporation in kind but that it could not recover from the stockholders the value of the assets coming into their hands respectively.

(3) That the action is barred by laches.

(4) That defendants being in adverse possession of the land under color of title for the statutory period, this action would be barred by limitation.

(5) That recovery must be limited to a reasonable royalty because the trespass was innocent.

(6) That there could be no allowance of interest.

In our judgment these contentions should be disposed of as follows:

[1] I. The rule is that a creditor of a dissolved corporation may follow assets thereof, as in the nature of a trust fund, into the hands of stockholders. Curran v. Arkansas, 15 How 304, 307, 14 L. Ed. 705; Mumma v. Potomac Co., 8 Pet. 281, 8 L. Ed. 945; Railroad Co. v. Howard, 7 Wall. 392, 410, 19 L. Ed. 117; Alf Bennett Lumber Co. v. Walnut Lake Cyprus Co., 105 Ark, 421, 151 S. W 275; Arlington Hotel v. Rector, 124 Ark. 90, 104, 186 S. W. 622; Des Arc Oil Mill v. McLeod, 141 Ark. 332, 216 S. W. 1040; Quinn v. McLendon, 152 Ark. 271, 238 S. W. 32. This liability may be enforced where the debt has been judicially established against the corporation in an action against it, but, where the corporation has ceased to exist, it is entirely proper for the validity of the debt to be presented and determined in the equitable action to enforce the above liability of the stockholder.

[2] II. The second of the above contentions is unsound as applied to the facts here present. The theory of creditors following corporate assets into the hands of stockholders is that such assets are a trust fund against which the corporation creditors have a prior claim before the stockholders. A stockholder who receives a portion of this fund is liable to respond only for that portion and it is out of that portion the creditor must secure his satisfaction. Where the distributed assets are in the form of money, the recovery, through applying thereto the trust theory, is the same, in a practical sense, as an action for that much money. But where the assets distributed are in kind, changes in the value thereof may occur between the time they come to the stockholder and the time the creditor seeks satisfaction from them in the stockholder's hands. Where the stockholder is not responsible for such change, obviously, the creditor can and must take the trust fund as he finds it, suffering any decrease and securing the advantage of any increase in value.

[3] How is the rule to be applied when such property has deteriorated through the fault of the stockholder? One who takes trust property with notice stands in the position of a trustee and may be held responsible as such. McClellan v. Pyeatt, 66 Fed. 843, 846 (this court), 14 C. C. A. 140; Pindall v. Trevor & Colgate, 30 Ark. 249, 266; 39 Cyc. 548. As such trustee, he is subject to an equitable action for accounting or for enforcement of the trust, even where the trust property has been destroyed. Harrigan v. Gilchrist, 121 Wis. 127, 251, 99 N. W. 909, 942; also see 39 Cyc. 572, b. And where the trust property has been used by the trustee for his own purposes or disposed of by him he may be held personally liable for the full value thereof in such equitable action. Oliver v. Piatt, 3 How. 333, 400, 11 L. Ed. 622; Adams v. Perryman & Co., 202 Ala. 469, 80 South. 853; Perrine Sawmill Co. v. Powell, 207 Atl. 447, 450, 93 South. 33, 36; also see United States v. Carter, 172 Fed. 1, 15, 96 C. C. A. 587 (7th C. C. A.); Sowles v. Bank (C. C.) 54 Fed. 564, 566, and 39 Cyc. 641, b, and note 82. It is, also, well established that equity will not permit a trustee to profit from his wrongful dealings with trust property. Oliver v. Piatt, 3 How. 333, 400, 11 L. Ed. 622. It would, therefore, seem to follow that the trustee could, in a similar equitable action, be required personally to respond for any diminution in the value of the trust property caused by

him. Where the usefulness or value of such property has been, in this way, seriously affected the cestui que trust may regard the property as destroyed and recover the value thereof at the time of its greatest value since coming into the hands of such trustees (here the stockholders). This is in consonance with the rules of law above announced. It is, also, but an application of the recognized power and duty of courts of equity, to work out justice between the parties where it has jurisdiction of the controversy. Just as the cestui que trust has the choice of following the res or of recovering the purchase price, where the trustee has sold the trust property to a purchaser with notice, so, where the trustee has seriously impaired the value of the trust property the beneficiary may elect to take the property with an accounting covering such damage or he may, abandoning the res, demand an accounting for the entire value. The facts here are that the assets of the corporation consisted of a mine tipple, railroad track, boiler, engine and general equipment for mining bituminous coal. After the corporation dissolved, this property continued in active use, during the mining seasons, for more than a year and a half. The users thereof were the five stockholders, except that one stockholder sold his one-fifth interest therein about five months after dissolution of the corporation. The purchaser, an experienced man familiar with such values, paid $8,000 therefor and continued the operation with the remaining stockholders. It appears that the assets, at the time of dissolution, were worth between $35,000 and $50,000. These assets would decrease rapidly because of depreciation from use. One witness, who was president of the corporation, places this depreciation at ten per cent. for a three months period. We think these facts compel the conclusion that the corporate assets coming to the stockholder had been seriously depleted in value because of this use of them by the stockholders for their own gain. This conclusion justifies application of the above rule permitting a corporation creditor to recover the value of the corporate assets coming into the hands of and used by a stockholder.

[4, 5] III. The claim of laches and limitation is based upon the following: much of this recovery is for mining done several years before suit was brought and within the period barred by the state statute of limitations, applicable to this character of action. The facts claimed by appellants as a basis for laches are that the Smokeless Company was, during the entire period of depredations openly claiming title adversely to the property mined and conducting their mining operations without concealment. Laches is an equitable doctrine, akin to estoppel, and is not controlled by statutes of limitations nor dependent upon mere lapse of time. Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873, 36 L. Ed. 738. Laches cannot exist unless and until a party has legal knowledge of the facts affecting his rights. Pence v. Langdon, 99 U. S. 578, 581, 25 L. Ed. 420; Kilbourn v. Sunderland, 130 U. S. 505, 518, 9 Sup. Ct. 594, 32 L. Ed. 1005; Galliher v. Cadwell, 145 U. S. 368, 372, 12 Sup. Ct. 873, 36 L. Ed. 738; and the following cases in this court: Layton Pure Food Co. v. Church & Dwight Co., 182 Fed. 35, 39, 104 C. C. A. 475, 32 L. R. A. (N. S.) 274; Kryptok Co. v. Stead Lens Co., 190 Fed. 767, 770, 111 C. C. A. 495, 39 L. R. A. (N. S.) 1. The court

finds upon an abundance of testimony, that there was an apparent acknowledgment, by the Smokeless Company, of the title of appellee during all of the time here involved and that the Smokeless Company actively and purposely and effectually misled appellee, in 1916, into believing that no further mining would be done upon the property of appellee; and, thereafter, actively concealed its mining operations thereon. These findings, amply supported by the evidence, dispose of this contention.

[6] IV. The fourth issue presented here is one of limitation. Appellants contend that they and their predecessors in title have been in adverse possession of this tract under color of title since 1916 and that appellee is barred by the applicable state statute of limitation, which is for two years. The color of title relied upon is a quitclaim deed procured from the state in the manner following: Several years prior to 1907, this land had been owned by the Prairie Coal Company, a corporation, which had conveyed it to the Ouita Anthracite Coal Company, which had in turn conveyed to the Consolidated Anthracite Coal Company, which owned the property and to which it was assessed in 1907; that under the statutes of the state, where there was different ownership of the surface and of mineral property, the two might be segregated for taxation and assessed separately; in 1907, 10 acres of the 40-acre tract involved here had their different ownership of surface and of mineral property, while the remaining 30 acres did not; that through some error the entire 40-acre tract was thus segregated and differently assessed, the tax on the mineral property became delinquent and, in 1908, was sold for such taxes and bid in by the state; that there is a general statutory provision permitting redemption, by the owner, of land sold for taxes, if made within two years after the sale for taxes (C. & M. Digest Stat. Ark. 1921, §§ 10096–10104); that nothing was done by any one to affect this situation until 1916; that prior to 1916, the Prairie Company had dissolved; that in 1916, George Heim (a defendant here and, at that time, an officer and director of the Smokeless Company) secured a quitclaim deed to this tract from the former stockholders of the dissolved Prairie Company, which company had parted with all title to this land several years before 1907 when it was thus separately assessed; that these grantors expressly disclaimed any title and told Heim they had none; that with this deed as the sole basis for any claim of ownership, Heim went through the form and paid the sums required by the statute for redemption by an owner and secured the quitclaim redemption deed provided for by statute; that Heim thereafter, in the same year, conveyed this "title" and "interest" to the Smokeless Company. Counsel have, naturally and properly, devoted attention to the question of whether or not such a title would constitute that "color of title" necessary to support adverse possession. However, we need not determine that matter. Conceding, but by no means deciding, that such is sufficient, yet we think there was no open, notorious, hostile possession shown here but quite the contrary. Appellee insists that adverse possession to underground mineral property is not possible and cites Lewey v. Fricke Coke Co., 166 Pa. 536, 31 Atl. 261, 28 L. R. A. 283, 45 Am. St. Rep. 684, Kingston v. Lehigh Valley

Coal Co., 241 Pa. 469, 88 Atl. 763, 49 L. R. A. (N. S.) 557, and Lightner Min. Co. v. Lane, 161 Cal. 689, 120 Pac. 771, Ann. Cas. 1913C, 1093. We need not pass upon the rule of law thus claimed to exist. Absent such a rule, yet the facts shown here are not sufficient to support the bar of limitations. There was no open, notorious, adverse possession. Within a few weeks after obtaining the above "title," in 1916, the Smokeless Company began mining on this property. This trespass was shortly discovered by appellee and the suit, above referred to, was filed promptly in the state court. As above stated, the parties apparently settled their differences for the time being and this suit was abandoned. Attorneys for the Smokeless Company at this time wrote a letter suggesting certain bases of settlement and saying:

"I represent the Smokeless Anthracite Company and will say that my people have no intention of going back on this property as long as there is any dispute about it."

Instead of doing as they thus stated they would, they soon resumed mining. From the time of such resumption until shortly before this action was brought the Smokeless Company and, thereafter, defendants herein actively and successfully concealed their depredations from appellee.

V. As shown above this trespass was not innocent but willful. Therefore, the fifth contention of appellants is unfounded.

[7] VI. The challenge of appellants to the allowance of interest before judgment is not well founded. It seems to be the law in Arkansas to allow interest on unliquidated claims from the date the liability accrues. Kelly v. McDonald, 39 Ark. 387; Ry. Co. v. Biggs, 50 Ark. 169, 6 S. W. 724; Ry. Co. v. Yarborough, 56 Ark. 612, 20 S. W. 515. The interest allowed herein by the court dates from the time the corporation assets came to appellants. Appellants have from that time, had this use of the property coming to them from the corporation. In the face of the claim here established, they had no right to such property or its use; therefore, they have no right to retain the advantage of such use but should respond. Otherwise, the trustee would profit by his own wrong and that will be prevented by a court of equity. Oliver v. Piatt, 3 How. 332, 400, 11 L. Ed. 622. To prevent such profit by a wrongdoer, the rule of allowing interest has been approved and applied in trover (Ryburn v. Pryor, 14 Ark. 505; Jefferson v. Hale, 31 Ark. 286) and in matters of constructive trusts, which are somewhat similar to the situation here (Holloway v. Eagle, 135 Ark. 206, 205 S. W. 113; Stubbs v. Pitts, 84 Ark. 160, 104 S. W. 1110).

The decree should be and is affirmed in both appeals.